UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAZMIN G.,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

22-CV-06155-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 11)

Plaintiff Jazmin G.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, and defendant's motion (Dkt. No. 9) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff filed for SSI on December 20, 2019, with an alleged onset date of December 13, 2018. (Administrative Transcript ["Tr."] 15, 321-22). The application was initially denied on March 18, 2020, (Tr. 15, 197-208), and on reconsideration on June 26, 2020. (Tr. 15, 209-22). Plaintiff filed a written request for hearing on July 7, 2020. (Tr. 257-59, 267-80). On November 19, 2020, Administrative Law Judge ("ALJ") Andrew J, Soltes, Jr., held a telephone hearing at which Plaintiff appeared and testified, along with her counsel. (Tr. 32-76). A vocational expert also appeared and testified. The ALJ issued an unfavorable decision on January 26, 2021. (Tr. 12-31). The Appeals Council ("AC") denied review. (Tr. 1-6). This case followed.

**DISCUSSION**

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

    II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2019, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative changes in the lumbar spine; neurofibromatosis; obesity; optic nerve glioma; and attention deficit hyperactivity disorder. (Tr. 17). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-20).

After step three, but prior to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work and she could not climb ladders, ropes, nor scaffolds. (Tr. 20-25). The ALJ also determined that Plaintiff could no more than occasionally stoop, kneel, crouch, nor crawl. Plaintiff could no more than frequently finger and handle. She should avoid using heavy machinery, including motor vehicles. Plaintiff should not be exposed to unprotected heights nor temperature extremes. The ALJ further determined that Plaintiff was limited to unskilled, low stress work defined as those consisting of simple

routine tasks and requiring no more than basic work-related decisions. She could only rarely adapt to changes in the work setting. (Tr. 20-25). At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. 25). At the fifth step, the ALJ determined that Plaintiff could perform other work that exists in significant numbers in the national economy and, thus, she was not disabled. (Tr. 25-26).

IV.  *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the AC failed to conduct a review of the ALJ's decision in light of new evidence that Plaintiff submitted—namely her school records. She also argues that the case must be remanded because the ALJ failed to order an intelligence examination. The Court agrees with Plaintiff on both counts.

The administrative hearing in this matter was held during the COVID crisis. (Tr. 15). At the hearing, the Plaintiff's counsel and the ALJ had a conversation about the need to obtain Plaintiff's academic records, and the difficulty, if not impossibility, of obtaining them in a timely manner. (Tr. 39-43). The ALJ ultimately closed the record without Plaintiff's academic records.

Subsequent to the issuance of the ALJ's decision, Plaintiff's counsel finally received Plaintiff's academic records (which included mental health records) and submitted them to the AC. (Tr. 77-133). The AC acknowledged receipt of the records, but despite the record containing no intelligence testing, found that such evidence did not "show a reasonable probability that it would change the outcome of the decision." (Tr.2). The AC did not explain its reasoning and did not even exhibit the records. (Tr. 2).

Plaintiff's school records showed that she had great difficulty in school and generally performed poorly. A speech-language assessment conducted on April 5, 2011, showed that Plaintiff had a severe receptive and expressive language disorder. (Tr. 123-128). Plaintiff's 10th grade Individual Education Plan stated that she had a significant delay in reading comprehension, which adversely affected her academic performance and necessitated her having to reread the material. She struggled with the mechanics of writing, had difficulty with recalling facts, and could perform only one-step equations. (Tr. 102). Despite being in the 10th grade, Plaintiff had only 6th grade writing levels, and 5th grade math abilities. (Tr. 102). Plaintiff's report card for 12th grade shows she received an "F" in physical education, geometry, algebra, global studies, reading, and writing. Her scores on various regents tests were all 51/100 or under. (Tr. 83-84). Her 11th grade report card was similarly poor. (Tr. 85-86).

A post-secondary student exit summary was completed on April 22, 2013. The Plaintiff was age 19 at the time. (Tr. 110-113). Among other things, the report found that she had ADHD and a brain tumor which affected her ability to focus when classroom instruction is given; that she required simplified language when directions were given for a new assignment or when information was given on a new topic; and that she was reading at only an upper 3rd grade/lower 4th grade level. It also showed that Plaintiff needed simplified language; refocusing and redirection; preferential seating; reteaching of material; and academic tasks to be broken down into smaller chunks.

A psychological evaluation performed in March and April of 2014 indicated that Plaintiff was subject to intellectual testing in 2005, at the age of 11. (Tr. 114-116). Her verbal IQ was found to be 81, her performance IQ was 74, and her full-scale IQ was

found to be 76 at that time. The evaluation further found, without the benefit of formal psychological testing, that Plaintiff's cognitive levels were within the borderline range, and that she had weak auditory and visual processing skills.

The Social Security regulations require the Appeals Council to consider "new and material" evidence "if it relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); see Perez v. Chater, 77 F.3d 41, 44 (2d Cir.1996). The Appeals Council, after evaluating the entire record, including the newly-submitted evidence, must "then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b); Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir.2010). If "the Appeals Council denies review after considering new evidence, the [Commissioner's] final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez v. Chater, 77 F.3d at 45 (internal quotation omitted). The newly-submitted evidence then becomes part of the administrative record and subject to review. See id. "The role of the district court is to review whether the Appeals Council's action was in conformity with [the] regulations." Ahearn v. Astrue, 2010 WL 653712, *4 (N.D.N.Y.2010) (citing Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000)).

To mandate consideration by the Appeals Council, the evidence must be both "(1) new and not 'merely cumulative of what is already in the record' and (2) material, meaning 'both relevant to the claimant's condition during the time period for which benefits were denied and probative.'" Shields v. Astrue, 2012 WL 1865505, *2 (E.D.N.Y.2012) (quoting Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991)). To be material, there must be "a

reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Jones v. Sullivan,* 949 F.2d at 60. "If the Appeals Council fails to consider new, material evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.'" *Ahearn v. Astrue,* 2010 WL 653712 at *4 (quoting *Shrack v. Astrue,* 608 F.Supp.2d 297, 302 (D.Conn.2009)).

The Appeals Council erred when it determined that petitioner's school records were insufficient to trigger review of the ALJ's decision. Having reviewed the record, particularly the ALJ's determination, the Court concludes that there is a reasonable possibility that the school records would have affected the ALJ's decision.

The school records constituted "new" evidence. The record makes clear that despite attempts by Plaintiff's counsel, Plaintiff was unable to obtain her school records prior to the hearing due to the COVID emergency. Further, the records are not cumulative because the record contains little to no objective evidence of Plaintiff's mental limitations.

With respect to materiality, the records lend substantial credence to Plaintiff's testimony that she suffers from disabling mental limitations—testimony that the ALJ determined was not credible. (Tr. 21-22) *See Jackson v. Astrue,* 467 F. App'x 214, 218 (4th Cir.2012) ("[n]ot only did these [school records] provide documentation that the ALJ's decision was lacking and eliminate the ALJ's very reason for denying [petitioner's] claim, they also reinforced the credibility of [petitioner's] testimony"). Further, the school records are material because, had they been submitted during the hearing, they would have almost certainly prompted the ALJ to order an intelligence exam to assess petitioner's

current intelligence level.³ *See Johnston v. Comm'r of Soc. Sec.,* 2012 WL 1030462, *3, 6 (S.D.Ohio 2012) (ALJ failed to develop the record by not ordering intelligence test where school records demonstrated claimant consistently performed poorly and where claimant testified that she could not read or write well, could only perform simple math and performed limited household chores including sweeping, assisting with laundry, cooking simple meals and occasionally grocery shopping with her daughters; "a cursory review of [claimant's] school records indicate a serious intellectual deficiency which the ALJ could not ignore"); *Stutts v. Astrue,* 489 F.Supp.2d at 1294–95 (ALJ failed to develop the record by not ordering an intelligence exam where claimant's childhood school records reflected IQ scores of 72; "standardized IQ testing was essential to a determination of whether the [claimant] meets Listing 12.05[;] ... the action will be remanded for the administration of appropriate standardized intelligence testing"); *Schwartz v. Halter,* 134 F.Supp.2d 640, 646, 656–57 & n. 18 (E.D.Pa.2001) (ALJ erred in denying attorney's request for a consultative psychological examination where claimant's school records reflecting poor performance "produced sufficient evidence to put the ALJ on notice that he may have low intelligence"); *see also Laveck v. Astrue,* 2012 WL 4491110, *5–6 (N.D.N.Y.2012) (ALJ failed to develop record by not ordering an intelligence exam where claimant testified that she had poor school performance and where consultative psychiatric exam suggested low average cognitive functioning; "there [was] scant medical evidence with regard to [claimant's] cognitive abilities[;] ... [in] the absence of any evidence relating to this impairment, the ALJ should have ordered a consultative intelligence exam"); *Johnson v.*

---

³ As noted above, Plaintiff's school records indicate that she was diagnosed with a brain tumor sometime prior to April 2013. (Tr. 111). In 2018-2020, Plaintiff was diagnosed with multiple brain abnormalities. (Tr. 411-12, 519-21, 748). Thus, it is important for Plaintiff to have an up-to-date intelligence test in order to see if the brain tumor or brain abnormalities have further diminished her intellectual abilities.

*Barnhart,* 312 F.Supp.2d at 426 (remanding for ALJ to evaluate whether claimant met Listing 12.05 where school records reflected an IQ of 72).

In its notice of determination, despite specifically noting the additional evidence submitted by Plaintiff, the AC provided absolutely no explanation for its conclusion that the new evidence did not warrant review of the ALJ's decision. (Tr. 1–6). The AC's unexplained, conclusory determination not to conduct a review of the ALJ's decision is error. *Swain v. Astrue*, 2014 WL 1315399 (W.D.N.Y. March 31, 2014).

In sum, the school records were new and material evidence that reasonably could have altered the ALJ's assessment or at the very least, prompted him to order further intelligence testing. Indeed, the consultative examiner, Dr. Todd Deneen, Psy.D., recommended that Plaintiff receive intelligence testing. (Tr. 717). Under such circumstances, the AC's failure to review the ALJ's determination in light of the new evidence constitutes error warranting a remand for consideration of the new evidence. *See Jackson,* 467 F. App'x at 218 (remanding where claimant submitted school records to Appeals Council indicating a childhood IQ score of 67; "[w]e cannot say that substantial evidence supports the finding that [claimant] failed to establish [first prong of 12.05(C) ] where new and material evidence submitted to the Appeals Council contradicts both the ALJ's findings and underlying reasoning, and the Appeals Council failed to provide any reason for disregarding this additional evidence"); *Sims v. Astrue,* 2010 WL 2985818, *6 (N.D.Miss.2010) ("[b]ecause the ALJ did not have an opportunity to consider the later-obtained IQ scores and [physician's] evaluation of [claimant's] capabilities, and because his analysis could be altered in light of that evidence, the evidence is 'material' and the case should be remanded to the ALJ for further consideration of whether [claimant] meets

... Listing [12.05(C) ]"). In any event, in the absence of a more developed record, the ALJ's mental RFC assessment is not supported by substantial evidence.

On remand, the ALJ should consider the new evidence (Plaintiff's school records) and should order further intelligence/IQ testing of the Plaintiff, as well as a supplemental psychological examination.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted and defendant's motion for judgment on the pleadings (Dkt. No.9) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    September 24, 2024
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge